On Application por a Reheaeing.
H. H. Hall in propria persona, W. S. Parlcerson and Chas. J. Théard of counsel, on the application:
D. O. McOan died on July 27, 1893. By his last will he appointed his wife and H. H. Hall his testamentary executors. Mr. Hall, on July 31, 1893, alone qualified. He alone conducted the administration of the succession.
Mr. McOan’s estate consisted of his half of the community. The entire community was inventoried of the value of one million four hundred and fifty-one thousand six hundred and ninety-nine dollars and seventy cents.
The administration of Mr. McOan’s succession involved, legally and actually, the administration and settlement of the entire community and the ascertainment, through its liquidation, of the exact sum coming to Mrs. McOan, as surviving widow in community.
Mrs. Hester McOan, widow of D. O. McOan, died on July 1, 1894. By her last will she appointed H. H. Hall her testamentary executor. He qualified July 16, 1894.
The inventory of Mrs. McOan’s succession showed that it consisted of—
(а) Separate paraphernal effects. $8,858 60
(б) Her net one-half of community as determined hy liquidation in her husband’s succession. 711,826 92
Total. $715,685 42
*980 On July 14, 1894, Mr. Hall filed an account of his administration as testamentary executor in the succession of D. C. McOan. This account, duly homologated on August 1, 1894, showed the net liquidated value of the community, to the one-half of which Mrs. McOan, or her succession, was entitled.
In the said account filed on July 14, 1894, in the succession of D. C. McOan,jMr. Hall charged and was allowed the regular executor’s legal commissions of two and a half per cent, on the entire amount of the community.
On July 10, 1895, Mr. Hall, as testamentary executor of Mrs. McOan, filed an account in her succession. On this account he charged his regular executor’s legal commission of two and a half per cent, on the entire amount of her succession.
The charge of the said commission on this account was made in the following terms :
From the balance of cash on hand in bant, as shown by the foregoing account, to-wit. $65 619 09
The executor will deduct his commission of. 17,892 03
Leaving cash on hand. $47,727 06
Mrs. Stempel, guardian, on July 22, 1895, filed an opposition to this account. She objected that—
“ The items charged as law charges and privileged claims are illegal, excessive, unreasonable and exorbitant, and the same are not lue and owing by this estate.”
This opposition of Mrs. Stempel, guardian, was regularly tried on November 22, 1895, and was dismissed. She was represented at the trial of this opposition by E. H. McOaleb, Esq., the counsel who represented her in the present appeal.
A suspensive appeal from the judgment dismissing her opposition was asked for by Mrs. Stempel, guardian, on December 9, 1895. But this suspensive appeal was abandoned.
On December 2, 1895, this court decided that the provisions in the wills of Mr. and Mrs. McOan directing Mr. Hall to retain under his administration and control the property bequeathed to Mrs. Stempel’s children until their majority, was void. The result of this decision was that it became Mr. Hall’s duty, -his administration as executor having terminated, to deliver the property of the two successions to Mrs. Stempel, guardian.
An application for a rehearing of the decision of December 2, 1895, on the wills was made, and was not refused until February 10, 1896.
*981 On January 6, 1896, Mr. Hall filed an account showing the results of his administration of all the property contained in the succession of D. O. McOan and in the succession of Mrs. McCan. Due notice of this account was served on Mrs. Stempel, guardian, through her agent, Mr. Albert Baldwin. This account being entirely satisfactory to Mrs. Stempel, represented by her agent, Mr. Baldwin, Mr. Hall on February 12, 1896, turned over all the assets and cash of the two successions to Mr. A. Baldwin, as agent of Mrs. Stempel, guardian, with the understanding that the account should subsequently be homologated. The account was accordingly homologated on February 14, 1896, two days after Mr. Stempel, guardian, through her said agent, had been put in possession of all the assets of the succession, and of all the cash on hand remaining after deduction of the charges shown on said account.
•On the said account filed January 6, 1896, and homologated February 14, 1896, there was a charge in favor of Mr. Hall of ten per cent, on the amount of the revenues and income collected by him during his administration of the property of the succession. This charge was fourteen thousand six hundred and seventy-five dollars.
Not only was it impossible for Mrs. Stempel’s agent, Mr. Baldwin, and her attorney, Mr. McOaleb, to overlook an item of such magnitude, plainly stated on an account with which they were so well satisfied that they accepted it and settled on it two days before its formal homologation, but, as a matter of fact, they were informed of the intention to make the charge, and approved it before the account was filed.
On January 19, 1897, Mrs. Stempel, guardian, still represented by Albert Baldwin, as her agent, and E. H. McOaleb, as her attorney, took a devolutive appeal from the judgment of February 14, 1896, homologating the account which she had approved and accepted through her said agent and attorney.
This appeal does not allege that there is error in any item of the account, but only that there is error in the judgment homologat-ing the account.
The executor filed his final account, which was duly published. The heirs were cited. No opposition was made to the account, which was regularly homologated upon due proof, the legal *982 representative of the heirs, as the record shows, participating in said homologation. No proof was offered by the heirs and no objection raised. Eleven months later the heirs appealed from that judgment and brought up to this court, not simply the account and evidence offered by the executor, but a transcript arbitrarily made up of any or all parts of three succession proceedings, no portion of which had been offered in evidence in the court below.
And this court took cognizance of the cause, and, upon issues and proof not raised or made in the court below, but first suggested in argument and brief and produced in this court, has rendered judgment against the executor for thirty-two thousand four hundred and forty-two dollars and eighty-two cents.
The executor asks for a rehearing and for relief from that judgment, because rendered in violation of the Constitution, which prohibits the Supreme Court from taking original jurisdiction. He asks this relief because, while appeals have been allowed to persons not filing oppositions, from judgments homologating accounts prematurely, or without evidence, this court has never entertained jurisdiction of such appeal, but has invariably remanded the cause for trial in the courts below. 29 An. 327; 28 An. 155; 48 An. 711; 23 An. 527; 20 An. 376; 29 An. 576; 39 An. 224.
Never in its history has the Supreme Court of Louisiana permitted a party who had not opposed an account to appeal from a regular formal judgment homologating that account, and to obtain, on appeal, relief which he had not asked below. 4 M. 222; 4 La. 300; 14 La. 237; 12 R. 157; 4 An. 475; 20 An. 86; 38 An. 832; 39 An. 474; 10 E. 118; 1 E. 385; 3 An. 664; 19 An. 488.
The executor is prepared to prove that the judgment appealed from was consented to and its execution acquiesced in. Whatever may be the legal effect of such proof, he should be allowed, in vindication of the perfect candor of his administration, to put this proof of record, and for that purpose he asks that the cause be remanded. Such has been the uniform practice of the court. 29 An. 576; 30 An. 224; 3 An. 115; 14 An. 329; 28 An. 272; 28 An. 743.
The court holds that, under no circumstances, can an executor who is not a tutor charge a commission upon rents and revenues *983 not embraced by the inventories, and yet, in exactly similar conditions as prevailing herein the court recently allowed such commission. Succession of Robertson, Sr., 49 An., p. 81.
If that judgment be permitted to stand as law, then the executor in the succession should have the relief granted in that succession.
The opinion of the court on this application was delivered by
BLANCHARD, J.
We have gone over these cases a second time with great care, and find ourselves unable to reach, on any part of the ground, conclusions different from those already announced.
The proposition of the finality of the judgments of homologation, which, it is contended, deprive the minors of any right to question the charges for commissions has, perhaps, been sufficiently discussed in our original opinion. It is appropriate to add that the defence of res judicata, never admitted on doubtful grounds, is to be received with greater caution when urged against minors.
The charge of thirty-six thousand two hundred and ninety-two dollars and forty-nine cents is sustained by law. It is charged on the entirety of the community property already in the hands of the husband’s executor when the wife died, and in his hands for an administration which embraced within its scope her. residuary community interest.
We can not find sanction for the charge of another commission, in the wife’s succession, on her share of the community, when, confessedly, it was being administered in the husband’s succession, where •the full charge had already been made.
Our conviction remains unshaken that the charge of seventeen thousand three hundred and ninety-two dollars and three cents and that of fourteen thousand six hundred and seventy-five dollars— the last introduced for the first time on the accounts of January, 1896 — are both reviewable on this appeal, unless we can hold that judgments of homologation admit of no appeal, a proposition not capable of support.
It is to be observed, too, that these accounts comprise, in large part, receipts derived from investments for the minors by the tutor, and charges for such investments, as well as for his commissions. They are not the ordinary administrator’s accounts of debts of a succession, i. e., due by the deceased, their payment, etc., in reference to which our courts have had occasion heretofore to deal, in respect *984 of the effect of homologation of such accounts. The executor himself claims to have stood in the relation of a trustee toward the minors — a trusteeship or quasi-tutorship attempted to be created by the wills. When rendered by tutors such accounts are but prima facie evidence. Throughout our law there is declared the purpose not to bind minors irrevocably by such accounts. C. C. 356; 10 La. 329; 7 R. 229; 1 H. D., p. 921, No. 3.
The analogy afforded by our legislation and jurisprudence on the subject of tutor’s accounts carry a suggestiveness in dealing with judgments of the character of those in question here, and our conclusion accords with the law, as well as with the spirit of that jurisprudence.
In the opinion heretofore handed down it must not be understood that any implied charge is intended that the executor had not discharged the trust imposed upon him with honor and fidelity.
His administration of .the affairs of the successions has not been questioned before us, and certainly no imputation upon the same is east by the court. The executor deservedly ranks high in character, standing and ability as a member of this bar and as a citizen. His overcharge of commissions resulted simply from a mistaken view of the law and of his rights thereunder, and from the impression he had formed that the legal representative of the heirs sanctioned the same.
Our view of the law differed from his; and we have felt it incumbent upon us to apply its provisions with strictness in a case involving the right of minors.
Rehearing refused.